UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANSITION INVESTMENTS, INC., | No. 11-CV-4775 (PAC) |
| Plaintiff, | |
| -against- | |
| THE ALLEN O. DRAGGE, JR. FAMILY TRUST, et al., | |
| Defendants. | |

**DEFENDANTS ALLEN O. DRAGGE, JR. AND THE ALLEN O. DRAGGE, JR.
FAMILY TRUST'S MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE COMPLAINT**

Thomas J. Fleming
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
Telephone: +1 212.451.2213
Facsimile: +1 212.451.2222

Beth H. Parker
ARNOLD & PORTER LLP
One Embarcadero Center
22nd Floor
San Francisco, CA 94111-3711
Telephone: +1 415.356.3000
Facsimile: +1 415.356.3099
(*pro hac vice*)

*Attorneys for Defendants Allen O. Dragge,
Jr. and The Allen O. Dragge Jr. Family
Trust*

1552321-1

Table of Contents

Page

I      INTRODUCTION ........................................................................................................1

II     BACKGROUND .........................................................................................................2

       A      Statement of Facts...........................................................................................2

       B      Procedural Background....................................................................................6

III    STANDARD OF REVIEW .........................................................................................7

IV     ARGUMENT...............................................................................................................7

       A      The Breach of Contract Claim Should Be Dismissed.............................................7

              1.      The Breach of Contract Claim is Barred by the Statute of Frauds ..............7

              2.      The Breach of Contract Claim Should be Dismissed because There
                      was no Agreement on Compensation ........................................................11

              3.      The Breach of Contract Claim Fails Because There Was An
                      Accord and Satisfaction .............................................................................12

       B      Plaintiff Fails to State a Claim for Unjust Enrichment or Quantum Meruit
              Against Dragge .............................................................................................13

              1.      Both Claims are Barred by the Statute of Frauds ......................................13

              2.      Both Claims are Barred as Duplicative of the Contract Claims ...............14

              3.      The Quantum Meruit Claim Must Be Dismissed Because
                      Plaintiff's Performance Was Never Accepted ...........................................14

V      CONCLUSION...........................................................................................................17

i

Table of Authorities

Page

CASES

*AG Ltd. v. Liquid Realty Partners, LLC*,
   448 F. Supp. 2d 583 (S.D.N.Y. 2006)....................................................................................10

*Allaire Corp. v. Okumus*,
   433 F.3d 248 (2d Cir. 2006)......................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).......................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................7

*Carruthers v. Flaum*,
   450 F. Supp. 2d 288 (S.D.N.Y. 2006)..............................................................................10, 11

*Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank*,
   U.S.A., 176 A.D.2d 131 (1st Dep't 1991) ........................................................................10, 12

*Cohn v. Geon Intercont'l Corp.*,
   62 A.D.2d 1161 (4th Dep't 1978)...........................................................................................16

*Diana Allen Life Ins. Trust v. BP P.L.C.*,
   No. 06 Civ. 14209 (PAC), 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) (Crotty, J.) ..............7

*Fitz-Gerald v. Donaldson, Lufkin & Jenrette*,
   294 A.D.2d 176, (1st Dep't 2002) .........................................................................................14

*Fort Howard Paper Co. v. William D. Witter, Inc.*,
   787 F.2d 784 (2d Cir. 1991)............................................................................................11, 12

*Freedman v. Chemical Constr. Corp.*,
   43 N.Y.2d 260 (1977) ...........................................................................................................8, 9

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
   667 F. Supp. 2d 308 (S.D.N.Y. 2009)....................................................................................11

*Guadagni v. Chong*,
   2 Misc. 3d 126(A) ...................................................................................................................13

*Gurfein v. Ameritrade, Inc.*,
   No. 04 Civ. 9526 (LLS), 2007 WL 2049771 (S.D.N.Y. 2007) ..............................................17

Table of Authorities
(continued)

Page

*Gutkowski v. Steinbrenner*,
   680 F. Supp. 2d 602 (S.D. N.Y. 2010)....................................................8, 9, 10, 11, 13, 14, 17

*Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*,
   754 F. Supp. 2d 610 (S.D.N.Y. 2010).......................................................................................11

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007)........................................................................................................7

*Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC*,
   93 N.Y.2d 229 (1999) ...............................................................................................................10

*Mgmt. Recruiters of Boulder v. Nat'l Econ. Research Assocs., Inc.*,
   No. 02 Civ. 3507........................................................................................................................8

*Morris Cohon & Co. v. Russell*,
   23 N.Y.2d 569 (1969) ...............................................................................................................12

*Nat'l Utility Serv., Inc. v. Tiffany & Co.*,
   No. 07 Civ. 3345 (RJS), 2009 WL 755292 (S.D.N.Y. Mar. 20, 2009) ...................................13

*Sarbin v. Southwest Media Corp.*,
   578 N.Y.S.2d 571 (1st Dep't 1992) .........................................................................................13

*Sefton v. Hewitt*,
   4 Misc. 3d 1001(A), 2004 WL 1388956 (N.Y. City Civ. Ct. 2004)..................................10, 12

*Sel-Leb Mktg., Inc. v. Dial Corp.*,
   No. 01 Civ. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002) ................................11

*Singh v. Kur*,
   64 A.D.3d 697 (2d Dep't 2009) ...............................................................................................10

*Snyder v. Bronfman*,
   13 N.Y.3d 504 (2009) ....................................................................................................9, 13, 14

*Stephen Pevner, Inc. v. Ensler*,
   309 A.D.2d 722 (1st Dep't 2003) .......................................................................................10, 16

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F. 3d 119 (2d Cir. 2005)......................................................................................................5

*Sugerman v. MCY Music World, Inc.*,
   158 F. Supp. 2d 316 (S.D.N.Y. 2001)......................................................................................13

Table of Authorities
(continued)

Page

*Winters Bros. Recycling Corp. v. Tabert*,
 30 Misc. 3d 139(A), 2011 WL 678389 (N.Y. App. Term 2011)..............................................13

*Zeising v. Kelly*,
 152 F. Supp. 2d 335 (S.D.N.Y. 2001)......................................................................................14

STATUTES

N.Y. Gen. Oblig. Law § 5-701.......................................................................................................11

N.Y. Gen. Oblig. Law § 5 701(a)(10)..............................................................................8, 9, 13, 14

OTHER AUTHORITIES

Rule 12(b)(6) of the Federal Rules of Civil Procedure....................................................................1

Rule 12(b)(6)...............................................................................................................................7, 11

SUSPECTS

section (a)(10) ..................................................................................................................................8

2006 WL 2109478, at *6 (S.D.N.Y. July 24, 2006) ........................................................................8

Defendants Allen O. Dragge, Jr. and The Allen O. Dragge, Jr. Family Trust respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's First Amended Complaint, dated January 17, 2012 ("FAC"),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I    INTRODUCTION

Not content with receiving a monthly retainer for minimal advice it provided Defendant Allen O. Dragge, Jr. ("Dragge), Plaintiff Transition Investment, Inc. now claims Dragge, along with The Allen O. Dragge, Jr. Family Trust and other unnamed trusts and family members descended from A.O. Smith, breached an agreement to compensate Plaintiff more than $1 million dollars for services it allegedly rendered.  The purported agreement was allegedly set forth in a letter, dated October 26, 2007, which Dragge never signed.  It explicitly recognized that the issue of compensation was unresolved.  The one subsequent email Plaintiff cites to create an agreement refers to "pending negotiations" over compensation.  Thus, this material element of any contract was never finalized.  Moreover, the October 26 letter conditioned the much higher payment - a right to buy shares of Smith Investment Company stock - on acceptance of a Preliminary Plan.  Plaintiff never finalized a Preliminary Plan; Dragge never accepted even the rough working draft outline; and Plaintiff most decidedly did not implement or otherwise perform under it.  Its claim for that compensation is, therefore, entirely unfounded.

Importantly, Plaintiff's alleged services fall within the purview of New York's Statute of Frauds.  Because there is no written agreement signed by Dragge, all three claims for breach of contract, quantum meruit and unjust enrichment are barred.  Plaintiff's First Amended Complaint should be dismissed with prejudice on this ground alone.

---

[1] The First Amended Complaint, together with its exhibits, is Docket 22.

Even were the Court to find that the Statute of Frauds does not apply, the complaint still should be dismissed. Because there was no meeting of the minds on compensation, any alleged contract is unenforceable. And, in the unlikely event the Court were to find a written contract with agreed-upon compensation, the breach of contract claim still should be dismissed. Dragge sent the final retainer check with the statement "FINAL PAYMENT - PAYMENT IN FULL" on its face, and Plaintiff cashed it. Thus, there was an accord and satisfaction, which precludes any subsequent breach of contract claim.

As to the quantum meruit and unjust enrichment claims, these just recast the contract claim in different words. As such, they are duplicative, and must be dismissed. Finally, the quantum meruit claim must be dismissed because Plaintiff nowhere alleges that he performed the services of the agreement he alleges or that Dragge ever accepted those services. Both performance and acceptance are key elements of a quantum meruit claim.

## II    BACKGROUND

### A    Statement of Facts[2]

Defendant Allen O. Dragge Jr. is a prominent stained glass artist. Along with other relatives, until 2008, he owned shares -- either directly or through family trusts -- in Smith Investment Company ("SMIC"), a corporation formed by the heirs of A.O. Smith to hold shares in A.O. Smith Company. (FAC ¶ 11.)

In early 2006, Gary Lutin ("Lutin"), Plaintiff's president, offered to give Dragge advice on how best to enhance the liquidity and value of Dragge's investment in SMIC. On March 13, 2006, Plaintiff sent Dragge a letter offering to conduct an exploratory review and give advice regarding potential value enhancement opportunities associated with Dragge's investment in

---

[2] This Statement of Facts is culled from the allegations in Plaintiff's First Amended Complaint, which are accepted as true solely for the purposes of this motion to dismiss, as well as the attached exhibits. The Dragge Defendants reserve their right to dispute any of the facts alleged in the First Amended Complaint.

2

SMIC for a standard retainer fee of $25,000. (FAC ¶ 19, Ex. B.) The 2006 letter expressly limited Plaintiff's engagement to an exploratory review: "This engagement is limited to a review, though, and does not involve any commitment or expectation for you to proceed with further advice or actions." (*Id.* ¶ 21, Ex. B.) The 2006 engagement concluded with Plaintiff's report, which contained a preliminary review of the shareholder interests in SMIC. (*Id.* ¶ 26.) By June 5, 2006, Plaintiff had been paid for its work under the 2006 engagement. (*Id.* ¶ 30.)

A year and a half later, in September 2007, Plaintiff sent Dragge a draft engagement letter setting forth proposed terms of a second engagement "to address alternatives for the value enhancement of the Smith Investment Company stock, held by you and your family's trusts." (FAC ¶ 39, Ex. H.) Plaintiff proposed that it "start[] with the development of a preliminary plan. This would include basic objectives and general strategies, with specific steps to be initiated upon your advice that a sufficient number of family trusts are controlled by trustees who are independent of current Smith management, presumably no later than December." (*Id.*) On October 26, 2007, Plaintiff emailed Dragge a "Final form of letter." (*Id.* ¶ 49, Ex. J.) The letter acknowledged that Plaintiff's compensation for "developing and implementing the value enhancement plan" had not been agreed upon: "On the subject of compensation, it's understood that we are not in a position now to establish what you and I would view as ideal provisions, so that we will both have to assume some risk in interim arrangements." (*Id.* Ex. J.) Plaintiff proposed as its compensation a monthly retainer and, "[i]f you consider the Preliminary Plan acceptable," either a right to buy SMIC shares or an acceptable alternative of equivalent value. (*Id.* Ex. J.) As this Court previously found, Dragge never signed this letter. (Opinion and Order dtd. Nov. 21, 2011; Dkt. No. 19 [hereinafter "Icaza Order"], at 4.)

3

On November 2, 2007, Dragge sent Plaintiff a monthly retainer "as a good faith payment *pending final negotiations*." (FAC Ex. L (emphasis added).) Less than three weeks later, Plaintiff emailed Dragge "a very rough working draft summarizing the idea of" creating a Smith Investor Association, with Lutin as the Association's Director. (*Id.* Ex. N.) Under the proposal, Lutin, as Director, would be paid $5000 monthly and granted options to acquire a number of units equal to 10% of the total issued to the Association, essentially the same compensation proposed in the October 26, 2007 letter. (*Id.*) In his cover email, Lutin gave a "dog ate my homework" excuse as to why he had not yet prepared even a Preliminary Plan. (*Id.* Ex. N ("The SEC announced unexpectedly that it's going to be proposing new rules … so I've been a little distracted … it's done a lot of damage to my plans for both the drafting work for our review").)

Plaintiff does not allege that it ever prepared a final Preliminary Plan. In fact, later emails show it did not. On December 17, 2007, for example, Plaintiff sent Dragge an email suggesting they speak to "review of draft and spreadsheet sent before your departure." (*Id.* ¶ 65.) On December 31, Plaintiff chided Dragge again about discussing the draft: "I've assumed from the absence of communication that you've been making good use of the Christmas spirit … I've attached copies of the discussion draft and worksheet sent to you in November, just in case you left the originals on some Pacific Island." (FAC, Ex. N (12/31/07 Lutin to Dragge email).) Similarly, nowhere does Plaintiff allege that the Smith Investor Association was ever formed or that Lutin ever became its Director. The First Amended Complaint glaringly omits any mention that Dragge ever accepted even the notion that Plaintiff form a Smith Investor Association or appoint Lutin as its director. And, in fact, neither happened.

On February 4, 2008, before Plaintiff ever submitted the Preliminary Plan, much less rendered services under it, the SMIC Board independently announced a plan to distribute AO

4

Smith stock directly to SMIC shareholders by merging into a subsidiary of AO Smith. (FAC ¶ 79, Ex. N (2/4/08 Dragge to family email).) As Dragge wrote his family: "I'm thrilled to share with you some terrific news I received from the SMIC Board last Friday afternoon: as of this morning, Monday, February 4th, the Board has announced adoption of the key elements from the plan to improve shareholder value that I presented at the annual shareholder's meeting 2 years ago." (*Id.*)

Having no further need for Plaintiff or his services, on February 11, 2008, Dragge terminated the relationship with Plaintiff. He wrote:

> I believe the Board of Smith Investment has given me what I have been lobbying for. Unequivocally. Completely. And irreversibly. Furthermore, I believe the Board's plans and intentions are now finally and legitimately in line with shareholder interests.
>
>             \*\*\*
>
> I no longer wish to engage your services and provided notice of termination last Tuesday.

(FAC, Ex. O.) Dragge continued: "I also believe I made it absolutely clear that our financial arrangement, and our only financial arrangement: the $5000/month stipend for 4 months, or terminating earlier on 45 days notice, was over and done." (FAC ¶ 77, Ex. O.) On February 29, 2008, Dragge sent Plaintiff the final retainer check. (*Id.* ¶ 78.) On its front, he put: "FINAL PAYMENT - PAYMENT IN FULL." (Declaration of Thomas Fleming ("Fleming Decl."), Ex. A.)[3] Plaintiff deposited that check. (FAC ¶ 78.)

---

[3] In determining whether dismissal is appropriate, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F. 3d 119, 122 (2d Cir. 2005). This check is incorporated into the complaint by reference, and relied upon for Plaintiff's assertion of a meeting of the minds. (FAC ¶ 78.)

5

More than three years later, on June 11, 2011, Plaintiff filed its Complaint seeking compensation of $1,196,563.00 for amounts allegedly owed under Paragraph B of the October 26, 2007 letter in New York Supreme Court.

**B      Procedural Background**

Plaintiff asserted claims under New York law against The Allen O. Dragge, Jr. Family Trust, Allen O. Dragge, Jr. (collectively, the "Dragge Defendants"), Dana Icaza ("Icaza") and numerous Does for breach of contract, quantum meruit and unjust enrichment.  All three claims sought compensation for the same underlying claim:  that Dragge allegedly failed to compensate Plaintiff for services it supposedly rendered to Dragge and his family relating to their interests in SMIC.  (FAC ¶¶ 1, 2.)

On July 11, 2011, the Dragge Defendants removed this action to this Court on the basis of diversity jurisdiction.  They claimed that Icaza, a New York resident, was fraudulently joined to defeat diversity.  On August 19, 2011, Plaintiff moved to remand to state court, and Icaza moved to dismiss Plaintiff's claims against her.  On November 22, 2011, this Court denied Plaintiff's motion to remand and granted Icaza's motion to dismiss.  It held that Plaintiff's breach of contract failed "because there is no agreement between Plaintiff and Icaza; Icaza never assented to any agreement; and Icaza is not liable under an alter-ego theory under New York law." (Icaza Order, at 8.)  The Court further found that the quantum meruit and unjust enrichment claims against Icaza were barred by the statute of frauds.  (*Id.* at 16.)

A pre-motion conference on the Dragge Defendants' Motion to Dismiss was held on January 9, 2012.  The Court suggested that Plaintiff amend its complaint, if it intended to do so, and that the parties agree to a briefing schedule for the motion to dismiss.  Plaintiff amended its complaint on January 17, 2012.  This motion follows.

6

## III    STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, the Court must accept as true the factual allegations in the plaintiff's complaint and draw all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). Nonetheless, to survive dismissal, "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Diana Allen Life Ins. Trust v. BP P.L.C.*, No. 06 Civ. 14209 (PAC), 2008 WL 878190, at *3 (S.D.N.Y. Mar. 31, 2008) (Crotty, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff is required to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In determining whether a complaint satisfies this standard, "the Court may consider 'any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference … and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'" *Diana Allen Life*, 2008 WL 878190, at *3 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (ellipsis in original)).

## IV    ARGUMENT

### A    The Breach of Contract Claim Should Be Dismissed

#### 1.    The Breach of Contract Claim is Barred by the Statute of Frauds

Plaintiff claims that a letter it sent Dragge on October 26, 2007, an email, and four monthly retainer payments constitute a contract, and that Dragge breached that contract by failing to pay the compensation to which he had agreed. (FAC ¶¶ 96-99, 103-105.) This breach of contract claim fails because, among other things, it is barred by New York's Statute of Frauds.

In New York, the Statute of Frauds requires that "a contract to pay compensation for services rendered in negotiating … a business opportunity" must be "in writing, and subscribed

7

by the party to be charged therewith." N.Y. Gen. Oblig. Law § 5 701(a)(10). This Court already

has found that the "services" Plaintiff provided fall within the realm of N.Y. Gen. Oblig. Law

§ 5-701(a)(10). (Icaza Order, at 16.) And they do. "Courts interpreting section (a)(10) have

generally held that where the transaction results in the acquisition of an existing enterprise or the

*formation of a new one*, it is a business opportunity." *Gutkowski v. Steinbrenner*, 680 F. Supp.

2d 602, 613 (S.D. N.Y. 2010) (emphasis added); citing *Mgmt. Recruiters of Boulder v. Nat'l*

*Econ. Research Assocs., Inc.*, No. 02 Civ. 3507 (BSJ-GWG), 2006 WL 2109478, at *6

(S.D.N.Y. July 24, 2006). The statute was intended to apply to "many situations which in

common parlance are described as 'business opportunities.'" *Freedman v. Chemical Constr.*

*Corp.*, 43 N.Y.2d 260, 267 (1977). Otherwise, "false or exaggerated claims could be asserted

easily and disproved only with difficulty." *Id.* Negotiating a business opportunity includes

providing services "such as: (1) identifying and analyzing the business opportunity; (2)

identifying and analyzing potential business partners; (3) and being a 'major contributor' to the

eventual formation of the [business opportunity]." *Gutkowski*, 680 F. Supp. 2d at 613. The

statute applies when plaintiff's services provide "connections," "ability," "knowledge," "'know-

how,' or 'know-who,' in bringing about between principals an enterprise of some complexity or

an acquisition of a significant interest in an enterprise." *Freedman*, 43 N.Y. 2d at 267.

Plaintiff's services fall well within this definition. The First Amended Complaint alleges

that its services entailed developing a Preliminary Plan "to address alternatives for the value

enhancement of the Smith Investment Company stock" held by Dragge and his family's trusts.

(FAC Ex. J.) The "rough working draft" of that plan, in turn, proposed creating a Smith Family

Association, a new organization, with Lutin as director. (FAC Ex. N.) The proposal clearly

(1) identified and analyzed a business opportunity: "value enhancement of the Smith Investment

8

Company stock held" by Dragge and his family's trusts; (2) identified and analyzed potential

business partners: "A limited number of SMIC shareholders"; and (3) promoted Lutin as a

"major contributor" to the formation of the Association: "Administrative Management, as well

as reporting and the development of recommendations for Advisory Panel and Participant

consideration, will be the responsibility of a company that employs Gary Lutin to serve as the

Association's 'Director.'" (*Id.*) Moreover, Plaintiff clearly contemplated that its services would

provide the ability, knowledge and know-how to create this association between Dragge and his

various family members. He described his work as "essentially the same as those of managers of

private equity funds, or possibly activist hedge funds." (FAC Ex. J.) Plaintiff's "claim is of

precisely the kind the statute of frauds describes." *Gutkowski*, 680 F. Supp. 2d at 613 (internal

quotation marks omitted) (dismissing plaintiff's claims for breach of contract, unjust enrichment,

and quantum meruit); see also *Snyder v. Bronfman*, 13 N.Y.3d 504, 508 (2009) (dismissing

plaintiff's claims); *Freedman*, 43 N.Y. 2d at 267 (dismissing breach of contract claim).

Because the statute of frauds applies to the type of services Plaintiff allegedly rendered,

there must be a written contract, executed by Dragge, to pay Plaintiff compensation. See N.Y.

Gen. Oblig. Law §5-701(a)(10). Plaintiff points to no written contract, because there is none,

which Dragge signed and in which Dragge agreed to pay compensation for Plaintiff's services.

Instead, it tries to cobble together an unsigned letter, a cursory email, and four checks to satisfy

the statute's written contract requirement. (FAC ¶¶ 96-99.) These documents are wholly

insufficient.

First, as to the October 26, 2007, letter, the Court already has found that Dragge did not

sign it. (Icaza Order, at 4.) It was a proposal sent by Plaintiff that Dragge never counter-signed.

(FAC Exs. J, K.) Under the Statute of Frauds, "[u]nsigned writings prepared by plaintiff will not

bind a defendant." *AG Ltd. v. Liquid Realty Partners, LLC*, 448 F. Supp. 2d 583, 586 (S.D.N.Y. 2006). Thus, the breach of contract claim should be barred. *See Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 723 (1st Dep't 2003) (dismissing breach of contract claim); *see also Singh v. Kur*, 64 A.D.3d 697, 698 (2d Dep't 2009) (same).

Plaintiff attempts to escape this problem by citing to a November 2, 2007, email that it claims "demonstrated a meeting of the minds and agreement to the terms." (FAC ¶ 98.) But that email demonstrates the opposite. In it, Dragge says: "I am sending you $5,000 today via my Wells Fargo online banking as a good faith payment *pending final negotiations* - hopefully we can talk tomorrow." (FAC Ex. L (emphasis added).) At most, this is a preliminary "agreement to agree," which is unenforceable. *See Carruthers v. Flaum*, 450 F. Supp. 2d 288, 308 (S.D.N.Y. 2006); *Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank*, U.S.A., 176 A.D.2d 131, 133 (1st Dep't 1991) (contract unenforceable where letters only indicate intent to negotiate essential terms); *Sefton v. Hewitt*, 4 Misc. 3d 1001(A), 2004 WL 1388956, at *3 (N.Y. City Civ. Ct. 2004) ("mere agreement to agree in which material term is left for future negotiations is unenforceable.").

Nor do the four monthly retainer checks Dragge sent satisfy the written contract requirement. At most, they constitute partial performance of the suggestion that Dragge pay a monthly retainer of $5000 until termination of the engagement. Under New York law, partial performance cannot remove a contract from the bar of the Statute of Frauds. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC*, 93 N.Y.2d 229, 234 n.1 (1999); *see also Gutkowski*, 680 F. Supp. 2d at 613 n.3 (ruling that "the New York Court of Appeals has 'firmly stated' that there is no part performance exception to § 5 701(a)(10) of New York's statute of frauds"); *AG Ltd.*, 448 F. Supp. 2d at 588 n.2 (Rakoff, J.) (noting that "the

exception to the statute of frauds for part performance is inapplicable to N.Y. Gen. Oblig. Law § 5-701").

Because there is no written agreement to pay Plaintiff for the services it proposed to render, Plaintiff's breach of contract claim is barred by New York's Statute of Frauds.  Courts routinely grant motions to dismiss under Rule 12(b)(6) where, as here, the purported agreements fail to satisfy the Statute of Frauds. *See, e.g., Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 616 (S.D.N.Y. 2010).  In this case, the complaint should be dismissed with prejudice. *See Gutkowski*, 680 F. Supp. 2d at 615 (dismissing complaint with prejudice as the statute of frauds renders futile any proposed amendment); *Sel-Leb Mktg., Inc. v. Dial Corp.*, No. 01 Civ. 9250 (SHS), 2002 WL 1974056, at *6 (S.D.N.Y. Aug. 27, 2002) (denying leave to replead where it was "clear that any amendment of the complaint would be futile because of the statute of frauds infirmity").

### 2.    The Breach of Contract Claim Should be Dismissed because There was no Agreement on Compensation

Even were this Court to find that the Statute of Frauds did not apply to bar Plaintiff's claim, it still should be dismissed.  The letter, email and retainer checks on which Plaintiff relies do not "state all of the essential terms of a complete agreement." *Carruthers*, 450 F. Supp. 2d at 308-09.  In particular, they demonstrate a distinct lack of agreement on how Plaintiff would be paid. *See Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 791 (2d Cir. 1991) (compensation is material term); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009) (same).  The October 26 letter says: "On the subject of compensation, it's understood that we are not in a position now to establish what you and I would view as ideal provisions, so that we will both have to assume some risk in interim arrangements." (FAC Ex. J.)  The cover email to the October 26, 2007 letter expressly asks

11

Dragge to propose "any other refinements." (*Id.*)  The only other writing Plaintiff points to, the November 2 email, references "pending final negotiations." (*Id.* Ex. L.)  The First Amended Complaint cites to no other writing, because there is none, evidencing an agreement on the compensation Plaintiff was to be paid.

Absent a meeting of the minds on compensation, a contract is unenforceable.  See *Cent. Fed. Sav., F.S.B.*, 574 N.Y.S. 2d at 19; *see also Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575 (1969) (upholding "the well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement, including the rate of compensation if there has been agreement on that matter").  Similarly, a mere agreement to agree, in which compensation is left for future negotiations, is unenforceable. *Sefton*, 2004 WL 1388956 at *3.

Because none of these documents, either alone or together, constitute a writing, signed by Dragge, which contain the material term of compensation, the breach of contract claim should be dismissed. *See Fort Howard*, 787 F.2d at 791 (dismissing breach of contract claim where none of the documents, alone or together, were sufficient to constitute a writing, signed by the party to be charged, which contained either expressly or by reasonable implication all the material terms).

### 3.    The Breach of Contract Claim Fails Because There Was An Accord and Satisfaction

Even were the Court to conclude that there was a written contract with an agreed-upon compensation, there was an accord and satisfaction, which precludes Plaintiff from now asserting a claim.  On February 29, 2008, Dragge sent Plaintiff a final retainer check, which Plaintiff deposited.  (FAC ¶ 78.)  On its face, the check says:  "FINAL PAYMENT - PAYMENT IN FULL." (Fleming Decl. Ex. A.)  A check made out as a final payment constitutes an accord and

12

satisfaction. For this reason too, the breach of contract claim should be dismissed. *See Sarbin v. Southwest Media Corp.*, 578 N.Y.S.2d 571, 572 (1st Dep't 1992) (affirming dismissal on ground of accord and satisfaction, where plaintiffs accepted deposited check tendered in full settlement of all claims, and plaintiffs did not reserve rights); *Winters Bros. Recycling Corp. v. Tabert*, 30 Misc. 3d 139(A), 2011 WL 678389 (N.Y. App. Term 2011); *Guadagni v. Chong*, 2 Misc. 3d 126(A), WL 23304856, at *1 (N.Y. App. Term 2003) (court dismissed claim where check cashed "in full settlement").

### B      Plaintiff Fails to State a Claim for Unjust Enrichment or Quantum Meruit Against Dragge

#### 1.      Both Claims are Barred by the Statute of Frauds

As this Court previously found with respect to Defendant Icaza, the unjust enrichment and quantum meruit claims are barred as well by the Statute of Frauds. (Icaza Order, at 16 (*citing Gutkowski*, 680 F. Supp. 2d at 605-08).) Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim. *Id.* (*citing Nat'l Utility Serv., Inc. v. Tiffany & Co.*, No. 07 Civ. 3345 (RJS), 2009 WL 755292, at *9 (S.D.N.Y. Mar. 20, 2009)). Quasi-contract claims are barred by § 5 701(a)(10). *See Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 326 (S.D.N.Y. 2001). Section 5-701(a)(10) specifically states: *"This provision* [requiring agreement for "services rendered in negotiating ... a business opportunity" to be in writing] *shall apply to a contract implied in fact or in law to pay reasonable compensation* but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman" (emphasis added). "Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under 'a contract implied ... in law to pay reasonable compensation.'" *Snyder*, 13 N.Y.3d at 509. Because they are both barred by New York's Statute of Frauds, they

13

should be dismissed. (*See id.* (affirming dismissal of quantum meruit and unjust enrichment claims where services involved finding and negotiating a business opportunity)); *see also Fitz-Gerald v. Donaldson, Lufkin & Jenrette*, 294 A.D.2d 176,  (1st Dep't 2002) ("Since General Obligations Law § 5-701(a)(10) applies to 'contract[s] implied in law or in fact,' it bars plaintiff's quantum meruit claim as well as breach of contract claim." (internal citation omitted; alteration in original)).

As with the breach of contract claim, it would be futile to amend these claims. Accordingly, they should be dismissed with prejudice. *See Gutkowski*, 680 F. Supp. 2d at 613, 616 (dismissing unjust enrichment and quantum meruit claims with prejudice because futile to amend due to statute of frauds infirmity).

### 2.    Both Claims are Barred as Duplicative of the Contract Claims

Both claims also fail because they are "merely duplicative of plaintiff's breach of contract claim." *Ensler*, 309 A.D. 2d at 723 (dismissing unjust enrichment and quantum meruit claims).  Here, the benefit Plaintiff alleges for both quantum meruit and unjust enrichment claims is "significantly increas[ing] the value of the interests of Dragge, the Smith Family Defendants and the Trust Defendants in SMIC and AO Smith."  (FAC ¶¶ 109, 115.)  This is the same benefit alleged in the breach of contract claim: "increasing shareholder value."  (*Id.* ¶101.)  As the First Amended Complaint makes no allegations beyond the subject matter of the purported contract, both the unjust enrichment and the quantum meruit claims should be dismissed.

### 3.    The Quantum Meruit Claim Must Be Dismissed Because Plaintiff's Performance Was Never Accepted

"In order to state a claim in *quantum meruit*, a plaintiff must allege (1) performance of services in good faith; (2) acceptance of these services by the person to whom they are rendered; (3) an expectation of compensation; and (4) the reasonable value of the services." *Zeising v.*

*Kelly*, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001). Plaintiff cannot recover on the quantum meruit claim here because Plaintiff alleges neither that he performed the services contemplated nor that the Dragge Defendants ever accepted Plaintiff's performance.

The October 26, 2007, letter proposed that compensation in the form of "the equivalent of a carried interest payment" be conditioned on acceptance of a "Preliminary Plan." (FAC Ex. J, at 3.) But Plaintiff does not allege that he prepared one. In fact, all the exhibits he attached to his First Amended Complaint show the opposite. And he refers to it as a "discussion draft" in his First Amended Complaint. (FAC ¶61.) On November 21, 2007, he emailed Dragge "a very rough working draft summarizing the idea of" creating a Smith Investor Association. (FAC Ex. N.) His cover email provided a "dog ate my homework" excuse as to why he had not had time to prepare a Preliminary Plan. (*Id.* ("The SEC announced unexpectedly that it's going to be proposing new rules … so I've been a little distracted … it's done a lot of damage to my plans for both the drafting work for our review.").) Subsequent emails continue to refer to the "discussion draft and worksheet sent to you in November." (*Id.* ¶65, Ex. N (12/31/07 Lutin to Dragge email).) They even chide Dragge about not finding time to even have a preliminary discussion. (*Id.* Ex. N (12/31/07 Lutin to Dragge email: "I've assumed from the absence of communication that you've been making good use of the Christmas spirit."); 1/28/08 Lutin to Dragge email ("We really need to talk some time today if we're going to proceed with a plan for 2008 instead of 2009.").) And, after the SMIC Board independently announced its plan to distribute AO Smith stock directly to SMIC shareholders on February 4, 2008 (FAC ¶ 79, Ex. N (2/4/08 Dragge to family email)), there was no further need for Plaintiff even to prepare a Plan. As Dragge told Plaintiff on February 11: "I believe the Board of Smith Investment has given me what I have been lobbying for. Unequivocally. Completely. And irreversibly." (FA, Ex. O.)

15

Nor does Plaintiff point to any document, because there is none, evidencing any acceptance. In fact, the written documents Plaintiff attaches to his First Amended Complaint show the opposite. In particular, the February 11 letter Dragge sent Plaintiff terminating the engagement said: "I disagree with your approach … I am not interested in pursuing a discussion of you or me taking an adversarial approach to assuring the changes the Board has just now voluntarily adopted." (FAC Ex. O.)

Recognizing the lack of any evidence to support his claim, Plaintiff claims several inconsequential and/or unrelated communications between him and Dragge between November 2007 and January 2008 show acceptance of the draft plan. (FAC ¶¶ 62-72.) Not one has anything to do with the creation of a Smith Investor Association with Lutin as its Director. The first email, dated November 24, merely shows that Dragge forwarded the "preliminary Association outline" to a Morgan Stanley representative and his finance and legal advisor. (FAC ¶63.) The second, dated December 17, is from Lutin suggesting an agenda to "review [the] draft and spreadsheet sent before your [Dragge's] departure." (*Id.* ¶ 65.) The remainder all discuss pitches to Dragge's family introducing Morgan Stanley as a trust administrator for the Smith family trusts. (FAC ¶¶ 66-72, *see also* Ex. N.) Not one of these makes any mention of the Smith Investor Association, the subject of Plaintiff's purported plan. (See FAC ¶ 61, Ex. N.) Where, as here, the writings offered do not describe the transaction for which Plaintiff seeks compensation, the claim for quantum meruit should be dismissed. *See*, *e.g.*, *Stephen Pevner, Inc.*, 309 A.D.2d at 723 (dismissing quantum meruit claim where writing relied on described a transaction that "never took place" and from which "no revenue was ever generated"); *Cohn v. Geon Intercont'l Corp.*, 62 A.D.2d 1161, 1162 (4th Dep't 1978) (dismissing claim for quantum meruit).

16

## V       CONCLUSION

For the above reasons, this Court should grant the Dragge Defendants' Motion to Dismiss

Plaintiff's First Amended Complaint.  Because plaintiff already has been granted leave to amend

the complaint, and any amendment would be futile, the motion should be granted with prejudice.

*See Gurfein v. Ameritrade, Inc.*, No. 04 Civ. 9526 (LLS), 2007 WL 2049771, at *4 (S.D.N.Y.

2007) (granting motion to dismiss with prejudice after plaintiff tried twice to state a claim for

breach of contract); Gutkowski, 680 F. Supp. 2d at 615 (dismissing complaint with prejudice as

the statute of frauds renders futile any proposed amendment).

Dated: February 3, 2012 at New York, NY.

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP                    AND


By:    /s/ Thomas J. Fleming                         ARNOLD & PORTER LLP
    Thomas J. Fleming                                Beth H. Parker
OLSHAN GRUNDMAN FROME                          One Embarcadero Center, 22nd Floor
ROSENZWEIG & WOLOSKY LLP                        San Francisco, CA 94111
Park Avenue Tower, 65 East 55th Street          Telephone:  +1 415.356.3051
New York, NY  10022                             Facsimile:  +1 415.356.3099
Telephone:  +1 212.451.2213 /
Facsimile:  +1 212.451.2222


*Attorneys for Defendants Allen O. Dragge, Jr. and The Allen O. Dragge Jr. Family Trust*

17